**Ex Parte Lemuel Anthony McNEIL, Appellant.**

**No. 01–04–01050–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 25, 2006.

Rehearing Overruled July 5, 2006.

Discretionary Review Refused Dec. 13, 2006.

Dick DeGuerin, DeGuerin & Dickson, John M. Parras, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, for appellee.

Panel consists of Justices JENNINGS,

ALCALA, and PRICE.*

## OPINION

ELSA ALCALA, Justice.

Appellant, Lemuel Anthony McNeil, appeals the trial court's denial of his application for pretrial writ of habeas corpus brought pursuant to TEX.CODE CRIM. PROC. ANN. art. 11.08 (Vernon 2005). Appellant was indicted on two charges, capital murder and arson. *See* TEX. PEN.CODE ANN. §§ 19.03(a)(8), 28.02(a)(2)(A) (Vernon Supp.2005). A trial by jury was held for the capital murder offense, and the jury acquitted appellant of capital murder. The State is proceeding with its prosecution for the arson offense. In his sole issue, appellant contends that the arson prosecution is prohibited by his constitutional protections against double jeopardy via the doctrine of collateral estoppel, because "the facts of the alleged arson were fully and fairly litigated in the murder trial and the jury necessarily found that the fire was accidentally set by its verdict of not guilty." We conclude that the State is not collaterally estopped from prosecuting the arson offense because the jury did not necessarily determine whether appellant set the fire. Accordingly, we affirm.

## Background

Appellant and Stephanie Flournoy met each other at church and subsequently engaged in a brief sexual relationship. As a result, appellant and Flournoy had a child, the complainant. Before Flournoy gave birth to complainant, appellant sought sole custody in family court. The custody hearing was held after complainant was born, and the family court granted appellant visitation rights every Saturday from

2:00 p.m. until 5:00 p.m. On his first visitation, appellant and his friend Yvonne Reid picked up the 13–month–old complainant and took her to appellant's house, where they were joined by Reid's daughter, Heidi Miller. Complainant was fussy, so Reid and Miller helped take care of her and then put her to sleep on a pallet on the floor in front of appellant's fireplace. Reid lit a fire in the fireplace because appellant told her that he felt chilled, and then, Reid left the house at approximately 3:40 p.m., while the baby was still lying on the floor and appellant was lying on the couch.

At 5:39 p.m., appellant called for emergency assistance, but was unable to speak because he had inhaled carbon monoxide and smoke. When emergency medical technicians (EMT) arrived at appellant's house, they discovered smoke coming out of the front door and appellant lying face down in the front hallway, holding the phone. They also found complainant lying on the pallet, dead.

The State's theory at trial was that appellant smothered complainant and then intentionally started a fire to conceal the murder. Appellant maintained that complainant's death was caused by the fire, which started accidentally. The jury subsequently acquitted appellant of capital murder.

After the acquittal, appellant filed an application for pretrial writ of habeas corpus alleging that the arson prosecution is prohibited by his constitutional protections against double jeopardy via the doctrine of collateral estoppel. The trial court entered judgment denying appellant's requested relief.

***

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

### Due Process and Collateral Estoppel

Appellant contends that the State is precluded from pursuing its arson prosecution because to do so would violate his constitutional protection against double jeopardy via the doctrine of collateral estoppel. Specifically, appellant contends that by acquitting appellant of capital murder, the jury necessarily found that appellant did not intentionally set the fire or that, alternatively, "[o]nly an irrational jury could conclude that [a]ppellant was not guilty of capital murder without also finding that [a]ppellant did not intentionally cause the fire in this case." The State contends that it is not collaterally estopped from prosecuting the arson offense because the jury's verdict of acquittal did not resolve whether the fire was intentionally set. Specifically, the State contends that complainant could have died by means independent from whether appellant intentionally set the fire.

 Collateral estoppel is a corollary of the Fifth Amendment prohibition against double jeopardy made applicable to the states through the Fourteenth Amendment. *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Collateral estoppel "means ... that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. To determine whether collateral estoppel bars a subsequent prosecution, a reviewing court must ascertain "(1) exactly what facts were 'necessarily decided' in the first proceeding; and (2) whether those 'necessarily decided' facts constitute essential elements of the offense in the second trial." *Ex parte Taylor,* 101 S.W.3d 434, 441 (Tex.Crim.App.2002).

 In *Ashe v. Swenson,* the Supreme Court stated the following:

[T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted). To determine whether a fact was necessarily decided, reviewing courts must determine whether specific facts were decided by the jury and if so, how broad the scope of the jury's findings were in terms of time, space, and content. *Ex parte Watkins,* 73 S.W.3d 264, 268 (Tex. Crim.App.2002). "The mere possibility that a fact *may* have been determined in a former trial is insufficient to bar relitigation of that same fact in a second trial." *Id.* (emphasis in original). A reviewing court must examine the entire trial record, including the pleadings, the evidence, the charge, and the arguments of counsel "to determine 'with realism and rationality' precisely which facts the jury necessarily decided and whether the scope of its findings regarding specific historical facts bars

relitigation of those same facts in a second criminal trial." *Id.* at 268–69.

■■■ In determining the scope of a fact barred by collateral estoppel, the "very fact or point now in issue" must have been "determined in the prior proceeding." *Taylor,* 101 S.W.3d at 441 (citations omitted). The issue must be precisely the same in both cases; thus, the legal and factual situations must be identical. *Id.* Accordingly, the defendant must "prove both that the issues are identical and that in reaching their verdict of not guilty in the first trial[,] the jury had to resolve the contested fact in favor of the defendant." *Ladner v. State,* 780 S.W.2d 247, 258 (Tex. Crim.App.1989).

"A general verdict returned in the guilt phase of a criminal trial frequently makes it difficult to determine precisely which historical facts a jury found to support an acquittal." *Watkins,* 73 S.W.3d at 269. "This task is considerably less difficult[, however,] when a jury is given special fact issues to determine." *Id.*

## A. Facts Necessarily Decided by the Jury in the Capital Murder Trial

Appellant correctly asserts that during the trial of the capital murder offense, the State focused on its theory that appellant intentionally set the fire to cover up murdering complainant. The following transpired during trial. The State questioned the venire panel during voir dire about reasons someone would intentionally set a fire.[1] During her opening statement, the State's attorney focused on the murder of complainant and the fire, by stating that

"on the first visit that [appellant] had with that baby[, he] smothered her and then set the house on fire to cover up what he had done." The State called eight witnesses, who testified about the cause of the fire, and a majority of the State's exhibits admitted at trial were evidence of the fire and its cause. Finally, the State's closing argument emphasized the theory that appellant started the fire. The State's attorney stated in closing argument, as follows:

All we know is that the defendant smothered her. Took the pillow, took his hands, compress [sic] the force, occluded her airway and smothered her. She didn't die from this fire. She died before this fire. And the fire tells you that the defendant did it and he tried to cover it up. And that's the significance of this fire. That's the significance. It tells you what the defendant was thinking. It tells you what his intentions were, what he was trying to do. And for two hours he has time to think about what he's done and think about a way to cover it up.

Despite the fact that the State's theory at the capital murder trial involved appellant intentionally setting the fire, we must determine whether the State is collaterally estopped from prosecuting the arson offense based on what issues the jury *necessarily* decided, not on whether the issue of appellant intentionally setting the fire was emphasized during the trial of the offense. *See Watkins,* 73 S.W.3d at 268–69.

■■■ In the capital murder trial, the jury charge inquired whether appellant "unlawfully, intentionally or knowingly cause[d]

---

1. [State's attorney]: Any other reason why someone might intentionally start a fire you can think of.

[Venireperson]: To hide evidence.

[State's attorney]: To hide evidence. Certainly you've probably read or heard of situations where a person has started a fire to destroy evidence or hopes of destroying evidence, right after they committed a crime. And often times that may—the fact that the person doesn't necessarily destroy evidence, and sometimes it kind of helps. Would you agree with that?

[Venireperson]: (Nods head affirmatively).

the death of [complainant] ... by smothering [her] with a deadly weapon, namely his hands; or ... with an unknown item."[2] The jury returned a general verdict of not guilty. The record shows that complainant could have died in one of three or more ways: (1) by being smothered with a deadly weapon before the fire started,[3] as the State theorized at trial, or (2) by being smothered after the fire started from lack of oxygen and inhalation of too much carbon monoxide, or (3) from inhaling too much smoke, as appellant suggested at trial. In order to acquit appellant, the jury thus necessarily determined that complainant did not die from appellant smothering her with a deadly weapon, namely his hands or an unknown item, and that complainant therefore died by other means. That fact cannot be relitigated and is barred by collateral estoppel. *See id.* at 269.

## B. Essential Elements of Arson

■ Although whether appellant intentionally started the fire was a disputed issue in the capital murder trial, the State will only be collaterally estopped from prosecuting arson now if the jury in the capital murder case was required to re-solve the contested fact of who started the fire. *See Ladner,* 780 S.W.2d at 258. The essential elements of arson in this case include starting a fire, with intent to destroy or damage any building, habitation, or vehicle, knowing that it is within the limits of an incorporated city or town. TEX. PEN.CODE ANN. § 28.02(a)(2)(A). Specifically, appellant's arson indictment asserts that he "unlawfully started a fire by igniting a flammable liquid with the intent to destroy and damage a habitation located at 10211 Cherry Limb, knowing that the habitation was within the incorporated limits of a city, namely Houston, Texas."

As set forth above, the issue necessarily decided by the jury in the capital murder trial was whether appellant smothered complainant with a deadly weapon, and the jury found by its verdict that he did not. *See Ashe,* 397 U.S. at 445, 90 S.Ct. at 1195. Therefore, the State is collaterally estopped from relitigating that issue. *See Watkins,* 73 S.W.3d at 269. However, collateral estoppel does not bar the State from prosecuting the defendant for an offense relating to complainant's death.[4] *See Taylor,* 101 S.W.3d at 445.

Here, by finding appellant not guilty of the offense of capital murder, the jury only

---

**2.** The indictment similarly charged appellant with "unlawfully, intentional[ly], and knowingly caus[ing] the death of [complainant], an individual under six years of age, by smothering the Complainant with a deadly weapon, namely his hands ... [or] an unknown item."

**3.** Although complainant's cause of death was vigorously contested at trial, the State's medical examiner concluded that complainant died before the fire started because "[t]here was no smoke inhalation and there was very little carbon monoxide." During cross-examination, however, the State's medical examiner conceded that although unlikely, complainant could have died due to a lack of oxygen from the fire.

**4.** Appellant seems to take a broader view of collateral estoppel than that articulated above. However, the Court of Criminal Appeals has held that

the concept of collateral estoppel has proven to be narrower in scope as might have originally been gleaned from the literal language of *Ashe.* In particular, the question is not whether there is a possibility that an ultimate fact was determined adverse to the government, but whether after examining the pleadings, evidence, jury charge and other relevant material in the record of the first trial a 'rational jury' *necessarily* grounded its verdict upon an issue which the defendant seeks to foreclose from relitigation.

*Ladner v. State,* 780 S.W.2d 247, 254 (Tex. Crim.App.1989) (emphasis in original).

*necessarily* found that appellant did not smother complainant, which is not an essential element of arson. *See Watkins,* 73 S.W.3d at 268; *Ladner,* 780 S.W.2d at 254. Furthermore, contrasting the allegations in the arson indictment with the indictments and jury charge in the capital murder prosecution, it is apparent that the issues are not identical. *See Ladner,* 780 S.W.2d at 256. Moreover, the jury's verdict in the capital murder trial could have been predicated upon the failure of proof of an element of the capital murder offense that is not necessary to prove the offense of arson. *Id.* at 255. Specifically, the jury's capital murder acquittal could have been based on the State's inability to prove that the cause of death of complainant was by smothering complainant with a deadly weapon, which is not applicable to the arson prosecution. *See id.* In the capital murder trial, the verdict did not address whether appellant started the fire. In other words, a rational jury could have grounded its verdict only on the issue of whether appellant smothered complainant regardless of whether he started the fire. We hold that the State is not collaterally estopped from prosecuting appellant for arson.

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment denying habeas corpus relief.