

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00147-CR

———————————————————

NOLAN CHASE NEIGHBORS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1735717

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Nolan Chase Neighbors appeals his convictions for one count of aggravated kidnapping and three counts of aggravated sexual assault of a child.[1] *See* Tex. Penal Code Ann. §§ 20.04, 22.021. In a single point, Neighbors argues that the trial court abused its discretion in admitting evidence of his internet search history over his objection under Texas Rule of Evidence 403. *See* Tex. R. Evid. 403. Because the trial court did not abuse its discretion, we will affirm.

## II. BACKGROUND

Neighbors, then age thirty-one, met Kim,[2] then age thirteen, on an online dating app. On June 16, 2022, days after they met online, Kim invited Neighbors to her home, approximately one-and-one-half hours' drive east of his Arlington apartment. Before meeting Kim, Neighbors sent her text messages instructing her to

---

[1]Neighbors was indicted for two additional offenses, but the State waived those counts before jury selection.

[2]To protect the child's identity, we use a pseudonym to identify her. *See* Tex. Const. art. I, § 30(a)(1); Tex. R. App. P. 9.8(c)(2), 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982). Additionally, because Neighbors does not contest the evidentiary sufficiency, we have greatly simplified the factual summary. *See Erickson v. State*, No. 02-19-00287-CR, 2020 WL 4907364, at *1 (Tex. App.—Fort Worth Aug. 20, 2020, pet. ref'd) (mem. op., not designated for publication).

pack a bag. While Kim's mother was at work, Neighbors met Kim, picked her up, and then drove her to his apartment.

At his apartment, Neighbors chained, handcuffed, and gagged Kim in his closet and had her sleep there at night. In the three days that Kim was in the apartment with Neighbors, he sexually assaulted her multiple times. Neighbors took two videos of the assaults.

Neighbors required that Kim communicate with him in text messages while in his apartment and that she call him "Daddy."[3] He told her to solicit her "cute" friends who were the same age as she was to become "sister slaves" whom he could "date." He elaborated, "I want you to be actively reaching out to cute friends or girls that you think would be interested in belonging to me. There is no amount that is too many. Bring me more girls." He further tasked her with seducing her mother after she returned home and told her he wanted "pictures and details" if she did.

Meanwhile, Kim's mother and the Arlington police worked together to locate Kim. Using cellular data from her phone, Arlington police obtained a warrant, tracked Kim to the apartment, arrested Neighbors, and returned Kim to her mother after a medical examination and forensic interview.

---

[3]In the text messages introduced at trial, Kim calls Neighbors only "Daddy," and he refers to himself as her father.

Samantha Torrence, a forensic interviewer supervisor at Alliance for Children, conducted the forensic interview. During the interview, Kim told Torrence that, when she arrived at Neighbors's apartment, she informed him that she was thirteen years old.[4] She said he acknowledged her age and said that thirteen is a great age for a daughter for him. Kim also said that Neighbors told her he wanted to change her name because he wanted to be her dad, she would be his daughter, and they would have sex every day.

Arlington Police Officer Nathan Bishop testified that he performed a forensic data extraction on a telephone that belonged to Neighbors that Arlington police seized after they arrested him. The extraction included internet search history from the Chrome web browser application indicating that Neighbors had searched using the terms "Real father daughter," "Videos/real incest," "real+incest," and "motherless.com."[5] The searches were timestamped from March through May of 2022.

At Neighbors's jury trial, no image or browsing results of those searches was introduced, only the record of the forensic examination demonstrating that the searches had been made. Neighbors objected to this evidence under Texas Rule of

---

[4]At trial, Kim testified that she had told Neighbors she was eighteen years old, not thirteen.

[5]The State originally offered evidence indicating that Neighbors visited the web page "motherless.com." The court admitted the evidence as a search term only.

Evidence 403.  *See* Tex. R. Evid. 403.  The trial court overruled the objection and admitted the search history.

The jury convicted Neighbors of all four felonies and sentenced him to three consecutive terms of twenty-years' confinement—one term for each count of aggravated sexual assault of a child—and a concurrent term of five-years' confinement for aggravated kidnapping.  He raises a single point challenging the admission of his internet search history.

### III.  DISCUSSION

**A.  Applicable Law**

A trial court "may exclude relevant evidence if its probative value is substantially outweighed" by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  Tex. R. Evid. 403; *McNeil v. State*, 398 S.W.3d 747, 756 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).  "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial."  *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op on reh'g); and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)).  This presumption places the burden on the party opposing admission to show that the evidence's probative value is substantially outweighed by one or more of the dangers

listed in Rule 403. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). This test requires the court to balance the evidence's inherent probative force and the proponent's need for that evidence against the evidence's tendency to suggest a decision on an improper basis or to confuse or distract the jury from the main issues, the possibility that a jury that is ill-equipped to evaluate the evidence's probative force would give it undue weight, and the likelihood that the evidence's presentation will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42. "In reviewing the trial court's balancing determination under Rule 403, we are to 'reverse the trial court's judgment rarely and only after a clear abuse of discretion.'" *Martinez v. State*, 468 S.W.3d 711, 718 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

## B. Application

On appeal, Neighbors argues that the probative value of the evidence, the State's need for the evidence, and the potential to impress the jury in an irrational yet indelible way weigh against its admission, and that the time needed to develop the

6

evidence weighs neither in favor of nor against its admission. We do not agree with his analysis.

### 1. The Probative Value of the Evidence

In addition to the aggravated kidnapping, Neighbors was charged with three counts of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021. "'Intent to arouse or gratify sexual desire' is an implicit element of aggravated sexual assault of a child." *Sarabia v. State*, 227 S.W.3d 320, 323 (Tex. App.—Fort Worth 2007, pet. ref'd) (quoting *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)); *see Evans v. State*, 299 S.W.3d 138, 142 (Tex. Crim. App. 2009) (explaining that intent-to-arouse-or-gratify element need not be expressly stated in the Penal Code section describing aggravated sexual assault of a child because of its descriptive title and because the required conduct is so severe "that the statute would not be applied to any legitimate handling of the child"). Intent may be inferred from circumstantial evidence "such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Hance v. State*, No. 02-19-00237-CR, 2025 WL 648349, at *19 (Tex. App.—Fort Worth Feb. 27, 2025, no pet.) (op. on reh'g).

In a case involving a sexual offense against a child, evidence that a defendant sought out even adult-only role-playing pornography can be admissible in the face of a Rule 403 objection when, as here, there is a clear nexus between the pornography and the victim or the pornography and the circumstances of the offenses. *Hance*,

7

2025 WL 648349, at *19 (collecting cases). Thus, evidence that Neighbors possessed, viewed, or searched for content that depicted daddy–daughter or incest pornography—whether actual or simulated or involving adults, children, or both—was highly probative of his intent to sexually assault Kim and to create videos of the assaults and to demonstrate his intent as evidenced by his plan and motivation. *See id.* This factor weighs in favor of admission.

### 2. The State's Need for the Evidence

Neighbors argues that the State's need for this evidence was low because his internet search history is unconnected with "any fact of consequence which is related to an issue in dispute regarding the charged offenses." However, a search history can be evidence of at least one element of the offense of aggravated sexual assault—intent. *See id.* Further, the search history was some of the scarce evidence of acts Neighbors took before the offenses, suggesting his intent and preparation. *See id.* at *21. Thus, we cannot say that the State's need for the evidence was as insignificant as Neighbors urges. *See Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). This factor weighs in favor of admission.

### 3. Tendency to Suggest a Decision on an Improper Basis, to Be Given Undue Weight, or to Unfairly Prejudice the Jury

Evidence confuses the issues if it would tend to confuse or distract the jury from the main issues in the case. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App.

8

2007). Evidence misleads the jury if it would be given undue weight by the jury on other than emotional grounds. *Id.*

"Unfair prejudice" refers to a "tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *James*, 623 S.W.3d at 549 (quoting *Gigliobianco*, 210 S.W.3d at 641). Evidence is not excludable under Rule 403 if it is merely prejudicial; "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013); *see* Tex. R. Evid. 403. Rule 403 is concerned not with prejudicial evidence but with evidence that is unfairly prejudicial. Tex. R. Evid. 403; *Pawlak*, 420 S.W.3d at 811.

In this case, the jury heard evidence that Neighbors required Kim to call him "Daddy," that he sexually assaulted her multiple times in the three days he kept Kim in the closet of his apartment, and that he made videos of the sexual assault. The challenged search history supports an inference that Neighbors was seeking similar material, potentially to prepare for Kim's abduction and sexual assault. *See Hance*, 2025 WL 648349 at *21 (citing *Russo v. State*, 228 S.W.3d 779, 805–06 (Tex. App.—Austin 2007, pet. ref'd)). In light of the probative evidence, the evidence of his search history for father-daughter pornography did not risk unduly confusing the issues or misleading the jury. *See Hance*, 2025 WL 648349, at *21; *Watkins v. State*, No. 02-12-00024-CR, 2013 WL 531062, at *3–4 (Tex. App.—Fort Worth Feb. 14, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication).

Although there is always a danger that a jury will give undue weight to or be unfairly prejudiced by evidence of similar extraneous acts, the "impermissible inference of character conformity can be minimized through a limiting instruction." *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). A limiting instruction in the jury charge is effective to remedy the impermissible inference. *See id.* The trial court's charge to the jury included an instruction limiting the jury's consideration of evidence of extraneous acts only to aid in "considering any motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any." The instruction properly admonished the jury in limiting its consideration to appropriate purposes. *See Thrift v. State*, 176 S.W.3d 221, 223–24 (Tex. Crim. App. 2005).

These factors weigh against exclusion.

### 4. The Time Necessary to Develop the Evidence

"'Undue delay' and 'needless presentation of cumulative evidence' concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Casey*, 215 S.W.3d at 880 (citing *Gigliobianco*, 210 S.W.3d at 641–42). The record demonstrates, and the parties to the appeal agree, that the time needed to develop the evidence was minimal, constituting no more than ten pages of a three-hundred-page transcript of a four-day trial. Thus, the trial court did not expend "an undue amount of time" such that the jury would be "distracted from consideration of the indicted

10

offense." *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). This factor weighs against exclusion.

### 5. Summary of *Gigliobianco* Factors

Balancing probative force and need against tendencies to suggest a decision on an improper basis, confuse or mislead, be given undue weight, or consume inordinate time, and considering the presumption against exclusion of evidence under Rule 403, we hold that the trial court did not abuse its discretion in admitting the search-history evidence. *See Gigliobianco*, 210 S.W.3d at 641–42; *James*, 623 S.W.3d at 546–47; *Sarabia*, 227 S.W.3d at 324. We overrule Neighbors's point.

## IV. CONCLUSION

Having overruled the sole point, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 15, 2025