PD-1665-14

PD-1665-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/22/2014 11:48:34 AM
Accepted 12/29/2014 1:02:21 PM
ABEL ACOSTA
CLERK

In the
Court of Criminal Appeals of Texas

Cause No. 01-14-00004-CR
In the
Court of Appeals for the First District of Texas
at Houston

Cause No. 1407407
In the 351st District Court
Of Harris County, Texas

KELVIN WAYNE WILLIAMS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

PETITION FOR DISCRETIONARY REVIEW

Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas 77008
713-228-3800
Casey.garrett@sbcglobal.net

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Kelvin Wayne Williams

Counsel for Appellant at Trial:

>   Ray Martin
>   Texas Bar No. 13099500
>   Leah Shapiro
>   Texas Bar No. 24056300
>   1201 Franklin, 13th Floor
>   Houston, Texas 77002

Counsel for Appellant on Appeal:

>   Casey Garrett
>   1214 Heights Boulevard
>   Houston, Texas 77008
>   Texas Bar No. 00787197
>   713-228-3800

Counsel for the State at Trial:

>   Lauren Byrne
>   Texas Bar No. 24055242
>   Amanda Greer
>   Texas Bar No. 24056773
>   Assistant District Attorneys
>   1201 Franklin Street, Suite 600
>   Houston, Texas 77002
>   713-755-6881

Counsel for the State on Appeal:
>   Harris County District Attorney's Office
>   Appellate Division
>   1201 Franklin, Suite 600
>   Houston, Texas 77002
>   (713) 755-5800

Trial Judge:  The Honorable Mark Kent Ellis

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................... 2

TABLE OF CONTENTS ..................................................................... 3

STATEMENT REGARDING ORAL ARGUMENT ............................... 5

STATEMENT OF THE CASE ............................................................. 5

STATEMENT OF PROCEDURAL HISTORY ........................................ 6

QUESTION PRESENTED FOR REVIEW ........................................... 6

PRAYER ........................................................................................ 10

CERTIFICATE OF COMPLIANCE ..................................................... 11

CERTIFICATE OF SERVICE ............................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Martinez v. State*, 883 S.W.2d 771 (Tex. App.—
Fort Worth 1994, pet. ref'd) .................................................................. 9

*Medina v. State*, 411 S.W.3d 15 (Tex. App.—
Houston [14th Dist.] 2013, no pet) .......................................... 10

*Mims v. State*, 335 S.W.3d 247 (Tex. App.—
Houston [1st Dist] 2010, pet filed) ....................................... 9

*Taylor v. State*, 735 S.W.2d 930 (Tex. App.—Dallas 1987) ........................ 10

*Thomas v. State*, 2 S.W.3d 640 (Tex. App.—Dallas 1999, no pet.) .............. 9

**Statutes**

TEX. PENAL CODE ANN. Sec. 1.07(a)(17)(A), (B) (West 2006) ..................... 8

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Kelvin Williams requests oral argument.

## STATEMENT OF THE CASE

Mr. Williams was charged by indictment with the felony offense of arson (C.R. 12). In particular, Mr. Williams was charged with unlawfully starting a fire by igniting an ignitable liquid with the intent to destroy and damage a habitation located at 5802 Twisted Pine Court, owned by Charlie Davis, and knowing the habitation was located on property belonging to another, and the defendant was reckless about whether the burning would endanger the life of a person and the safety and property of another, to wit: by setting fire to an occupied habitation (C.R. 12). Mr. Williams was charged with using and exhibiting a deadly weapon, namely fire, during the commission of the arson (C.R. 12). Mr. Williams pled not guilty (R.R. 4 – 7), and the case was tried before a jury. The jury found him guilty as charged in the indictment (C.R. 353). The jury also found "true" on the special issue, adding a deadly weapon finding (C.R. 353). Punishment was assessed at fifty-five years in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine (C.R. 353).

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals filed a memorandum opinion affirming the conviction on November 20, 2014. No motion for rehearing was filed. Pursuant to Rule 68.2 of the Texas Rules of Appellate Procedure, this Petition for Discretionary Review should be filed thirty days after the day the court of appeals filed its opinion.

## QUESTION PRESENTED FOR REVIEW

Is it inappropriate under the Penal Code for the prosecution to rely on one of the elements of arson, the use of fire, to support a deadly weapon finding even in a case with no serious injuries or deaths, such that every arson ever indicted will result in a deadly weapon finding, since fire by its nature always presents a risk to human life?

## ARGUMENT

Is it inappropriate under the Penal Code for the prosecution to rely on one of the elements of arson, the use of fire, to support a deadly weapon finding even in a case with no serious injuries or deaths, such that every arson ever indicted will result in a deadly weapon finding, since fire by its nature always presents a risk to human life?

In the instant case, the charge defined "deadly weapon" as anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. Sec. 1.07(a)(17)(A), (B) (West 2006). In *Mims v. State*, 335 S.W.3d 247

6

(Tex. App.—Houston [1st Dist] 2010, pet filed), the court below rejected the defendant's argument that fire cannot be a deadly weapon in an arson case because it is a redundancy since fire is an element of arson. As the appellant pointed out in that case, "fire" is already a necessary element of arson. A petition has been filed in that case and Mr. Williams contends it was wrongly decided. Elevation of the offense of "arson" to a so-called 3(g) offense by the addition of a deadly weapon finding would be essentially automatic in every arson case. In fact, if the decision in *Mims* is permitted to stand, the offense of arson should not even require a special issue regarding the use of a deadly weapon, as every arson case involves the use of fire.

It is true, as the court below said in *Mims*, that several courts of appeals have recognized that conduct which is an element of an offense can also be the basis for a deadly weapon finding. *See Mims*, 335 S.W.3d at 252, citing *Thomas v. State*, 2 S.W.3d 640, 642-643 (Tex. App.—Dallas 1999, no pet.) and *Martinez v. State*, 883 S.W.2d 771, 774 (Tex. App.—Fort Worth 1994, pet. ref'd). The cases cited in *Mims*, however, did not involve fire. Fire, by its nature, cannot be "aimed" at someone or at the ground or easily contained. It will always present, in some way, a danger to human life if used in a manner that satisfies the arson statute. It is unlike common household items or unusual substances that can be elevated to deadly

7

weapons because fire unleashed as arson will always be dangerous. The court below concluded it was powerless to alter the decision in *Mims*, citing *Medina v. State*, 411 S.W.3d 15, 20 n. 5 (Tex. App.—Houston [14th Dist.] 2013, no pet) for the proposition that its own prior decision was binding precedent absent a decision from this Court. This Court should consider the question of whether it is inappropriate to include a deadly weapon in an arson case based on the use of "fire."

Even if the court below was correct in its reliance on *Mims*, the facts in that case are distinguishable from the situation in this case. In *Mims*, an elderly woman was severely injured in the fire the defendant set, resulting in her death. *Id.* at 249. Likewise, in *Taylor v. State*, 735 S.W.2d 930, 949 (Tex. App.—Dallas 1987), *abrogated on other grounds by Gaines v. State*, 761 S.W.2d 2 (Tex. Crim. App. 1988), the defendant poured gasoline in a room occupied by her unconscious husband and ignited it. *Id.* at 949. The fire killed her husband. *Id.* In these cases, the defendant's actions severely injured or killed another person and the courts allowed a finding of deadly weapon to stand.

In the instant case, no one was injured in the fire. Kelvin Williams was injured on the lawn by Aaron Greenwood, who fought with him and ultimately set him on fire, but none of the occupants of the townhomes were

8

injured and no one was killed. Furthermore, the evidence established that there was no fire, and might not have been a fire, if Aaron Greenwood had not attacked Kelvin Williams (R.R.4 – 179, 213). When Greenwood shoved Williams, Williams was holding a lighter and everything just went, "wooooof" (R.R.4 – 177). Even if the evidence was sufficient to show Williams spread gasoline on the buildings, even if the jury believed Greenwood's testimony that it was Williams spreading the gasoline and not Greenwood himself, the evidence shows Williams did not intentionally light anything on fire and did not use fire as a weapon, deadly or otherwise. Williams cannot be convicted of using a deadly weapon, namely fire, when fire is a natural and even unintended result of the gasoline spread on the buildings and the fire was set as a result of an assault on Williams by Greenwood.

Without Greenwood's intervention, Williams might have confronted Davis, set an alarm, or decided against setting a fire. The fire only started because he was attacked outside the townhouse complex. In an assault case, if a bystander pressed a pistol into the defendant's hands, the defendant would not suddenly be guilty of aggravated assault because of the "use" of a deadly weapon. Greenwood started the fire, even if Williams committed the arson. On top of that, no one was injured or killed. The "fire" in this case

9

was not a deadly weapon in its use or intended use, and the deadly weapon finding should be struck from the judgment.

## PRAYER

Appellant respectfully prays this Honorable Court to grant his petition for discretionary review.

Respectfully submitted,

_____/s/Casey Garrett_____
Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas 77008
713-228-3800
Casey.garrett@sbcglobal.net

## CERTIFICATE OF COMPLIANCE

This is to certify that the petition for discretionary review has 1, 557

words in compliance with Rule 9 of the Texas Rules of Appellate Procedure.

_____/s/Casey Garrett_____
Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas 77008
713-228-3800
Casey.garrett@sbcglobal.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent

through the e-file system to the following party:

Harris County District Attorney's Office
Appellate Division
1201 Franklin, Suite 600
Houston, Texas 77002


                                 ____/s/Casey Garrett____
                                 Texas Bar No. 00787197
                                 1214 Heights Blvd.
                                 Houston, Texas 77008
                                 713-228-3800
                                 Casey.garrett@sbcglobal.net



# JUDGMENT

# Court of Appeals

# First District of Texas

NO. 01-14-00004-CR

KELVIN WAYNE WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 351st District Court of Harris County. (Tr. Ct. No. 1407407).

This case is an appeal from the final judgment signed by the trial court on November 20, 2013. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered November 20, 2014.

Panel consists of Chief Justice Radack and Justices Jennings and Keyes. Opinion delivered by Chief Justice Radack.

Opinion issued November 20, 2014



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-14-00004-CR

---

### KELVIN WAYNE WILLIAMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1407407

---

## MEMORANDUM OPINION

Appellant was convicted of felony arson and sentenced to 55 years' confinement and assessed a $10,000 fine. In two issues, he argues that the jury's finding that he used or exhibited a deadly weapon was improper, and that the evidence is insufficient to support his conviction. We affirm.

# EVIDENCE AT TRIAL

In 2010, appellant lived with his girlfriend, Charlie Davis, and her three children at Davis's townhouse on Twister Pine Court in Houston. Davis's townhouse was near the middle of a row of six attached townhomes. Each townhouse had a front door facing the street and a garage at the back of the unit facing an alley. In October of 2010, all six townhouses in Davis's building were occupied.

Davis testified that, on October 15, 2010, her car broke down as she was trying to leave that morning. A neighbor, Aaron Greenwood, was passing by and offered to go find someone to look at the car. Greenwood returned with his friend, Willow. At some point during the day, appellant came home and was angry to discover Greenwood and Willow in the garage working on Davis's car. According to Davis, appellant's anger appeared to be jealousy driven, as appellant is a mechanic and was irritated that Davis asked someone else for help.

Appellant pulled a knife on Greenwood and Willow, threatened to "kill all of you–all," and ordered them to leave. Appellant chased Greenwood down the street. When Greenwood got to his car, he pulled out a tire iron to defend himself. Eventually, Greenwood got in his car and drove off. Appellant then also left. Someone called the police about the incident, and officers came out to the area. They were not able to locate appellant, but talked to Greenwood and Davis.

2

Although Davis did not know Greenwood well and Greenwood had never previously been to her home, Greenwood came back to Davis's townhouse and ended up spending a large part of the day with Davis. Greenwood and Davis drank beer, played video games, and chatted with Davis's children. Greenwood left sometime after dark and Davis settled in with her kids on the couch to watch a movie. Appellant later called and asked Davis to come pick him up. She testified that it was an odd request, as he had his own vehicle with him. She told him to drive himself home, which appeared to anger him.

Davis and her children fell asleep on the couch late that night watching their movie. Davis woke up sweaty about 2:00 a.m. and immediately got up to go check the temperature on the thermostat. When she turned around to return to the sofa, she saw that the townhouse's front window, which was behind the sofa, was orange. She then looked over at the front door and saw flames coming in from under the crack of the door.

She frantically woke up her kids and raced them towards the garage at the back of the townhouse. When she discovered that the garage door was hot, she realized that the garage was on fire as well. She escaped through a sliding glass door to a patio, and then she and her kids scaled a fence to the neighbors' patio. They pounded on the neighbors' patio door to rouse them, and then they all escaped through the neighbors' front door.

In the front yard, they saw Greenwood and appellant rolling around on the ground fighting. Appellant's clothes were on fire. Davis saw appellant's Ford Explorer—with its engine still running and the driver door open—parked right in front of her townhouse. Davis and her neighbors ran up and down the building getting residents out while they waited for the fire department to arrive.

Another resident of the townhouse building testified to running outside after hearing Greenwood and appellant fighting. Greenwood called out to her to call the police at the same time she realized that the building was on fire. She called the police and assisted in waking up neighbors.

Greenwood testified that, before the fire, he had been standing talking with a friend under a tree across from his own house when appellant drove by in his Ford Explorer and turned down the alley behind the townhouse building. Greenwood starting walking in that direction to confront appellant because he was still angry about appellant threatening him earlier in the day. By the time Greenwood made it to the back alley, he saw appellant climb into his truck and drive around towards the front of the townhouse. Greenwood then set off to follow appellant around front. When Greenwood got to the front of the townhouse, appellant was there with a gas can throwing gasoline on the walls and all around Davis's townhouse. Greenwood ran toward appellant, pushed him against the wall, and suddenly there was a "whoosh" from flames started by the lighter in appellant's hand. Appellant's

4

clothes caught fire and then appellant tried to catch Greenwood on fire, telling him, "I'm going to burn your black ass up, too." Greenwood grabbed appellant and flipped him to the ground. That extinguished the fire on appellant, and the two started rolling around on the ground fighting. Greenwood was also yelling, trying to rouse people in the homes to alert them that their homes were on fire. Appellant eventually passed out and was loaded into an ambulance.

Ultimately, it took seventy-five firefighters more than ten hours to put out the fire. The entire townhouse building was destroyed, and Davis, her family, and their neighbors lost everything in the fire. Davis and her kids spent a few hours at Greenwood's house, moved to a hotel for a few nights, and then to a Red Cross shelter. Davis and her family eventually moved to Mississippi.

Various expert witnesses, including arson investigators, testified at trial that (1) the fire was set by an ignitable liquid; (2) the fire had two unconnected points of origin (i.e., the garage and in the front of the townhouse); (3) a melted gasoline can was found in front of the townhouse; and (4) appellant's clothes had gasoline on them. Consistent with Greenwood's testimony, surveillance tapes were also introduced at trial showing (1) a Ford Explorer driving into the back alley, (2) a flash of the fire starting behind the building in the garage area, and (3) the vehicle driving back around to the front of the townhouses while light flickering from the garage fire reflects against the trees. The Explorer stops in front of the townhouse

5

and then the driver gets out and walks towards the front door of the townhouse, which is outside the view of the camera. A second huge flash is seen, followed by blurry footage of two people tussling on the ground.

Finally, an "Enrollment for Life Insurance" form was introduced at trial. The form was found in appellant's pocket in an addressed envelope when he was taken to the hospital. The application identified Davis as the "Proposed Insured," identified appellant as the "Beneficiary," and identified the beneficiary's "Relationship to Proposed Insured" as "husband." The form contained a signature for Davis, and was dated October 13, 2010, three days before the fire. Davis testified at trial, however, that she had not seen the application before, and that—although it purportedly bore her signature—the handwriting on the application was not hers, it was actually appellant's. Davis's daughter likewise testified that none of the handwriting on the life insurance application was her mother's.

The jury convicted appellant of arson and found that he "used or exhibited a deadly weapon," i.e. fire. Appellant plead true to a prior conviction of aggravated rape, and the jury assessed punishment at 55 years' confinement and a $10,000.00 fine. The court entered judgment in accordance with the jury's verdict, and appellant timely appealed.

### ISSUES ON APPEAL

On appeal, appellant brings forth the following issues:

1. "The deadly weapon finding was inappropriate because the use of fire was not intended as a weapon."

1. "The evidence presented at trial was insufficient to support a conviction for arson."

## FIRE AS A "DEADLY WEAPON"

In his first point of error, appellant argues that (1) this Court's decision in *Mims v. State*, 335 S.W.3d 247 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd), holding that fire can be a deadly weapon in an arson case, was wrongly decided, and (2) in any event, this case is distinguishable from *Mims*.

A "deadly weapon" is defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17) (Vernon Supp. 2014). In *Mims*, the defendant intentionally set an apartment building on fire, and one of its residents died in the fire. 335 S.W.3d at 248. On appeal, the defendant challenged the trial court's finding, included in the judgment, that the defendant "used or exhibited a deadly weapon, namely, fire, during the commission of a felony offense." *Id.* Specifically, the *Mims* defendant argued that fire should not qualify as a deadly weapon in an arson case because "the act of starting a fire that results in bodily injury is an essential element of the offense of first-degree arson." *Id.* at 251. Accordingly, the defendant argued, "such conduct

cannot both be an element of the charged offense and be used to support a deadly weapon finding." *Id.* We rejected that argument, noting that "[s]everal Texas courts of appeals have recognized that conduct which is an element of an offense can also be the basis of a deadly weapon finding." *Id.; see also McNeil v. State,* 398 S.W.3d 747, 755 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (rejecting argument that deadly weapon paragraph in indictment was redundant of the underlying crime of arson).

Here, appellant insists that *Mims* was wrongly decided because a deadly weapon finding "would be essentially automatic in every arson case," as "every arson case involves the use of fire." Appellant cites no authority in support of his argument that *Mims* was incorrectly decided, and *Mims*'s rejection of appellant's arguments and holding that the use of fire can support a deadly weapon finding in an arson case is binding precedent, *see Medina v. State,* 411 S.W.3d 15, 20 n.5 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("absent a decision from the Court of Criminal Appeals or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, we are bound by our prior panel decision"), that has since been applied and followed by another panel of this Court. *McNeil,* 398 S.W.3d at 755.

Alternatively, appellant insists that the facts here are distinguishable from *Mims,* and that—as a matter of law—fire cannot be considered a deadly weapon in

8

this case. Appellant points out that, in *Mims*, a woman died in the fire set by the defendant. 335 S.W.3d at 249. Similarly, in *Taylor v. State*, 735 S.W.2d 930, 949 (Tex. App.—Dallas 1987) *abrogated on other grounds by Gaines v. State*, 761 S.W.2d 2 (Tex. Crim. App. 1988)—the case we relied upon in *Mims*—the defendant's husband died in the fire set by the defendant. According to appellant, this case is thus distinguishable because "no one was injured in the fire."[1]

As noted above, a deadly weapon can be "anything that in the manner of its use or intended use *is capable of* causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(17)(b) (emphasis added). Although "there must be evidence that others were actually endangered" rather than "a hypothetical potential for danger if others had been present" to sustain a deadly weapon finding,[2] *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003), there is no requirement that anyone actually be injured. Torching a fully occupied building in the middle of the night is using fire in a way that "is capable of causing death or serious bodily injury." Moreover, appellant set both the front and back of Davis's townhome on fire knowing that she and her children were home, in what could

---

[1] He also contends that there would not have been a fire at all if Greenwood had not attacked him, which ignores the evidence that appellant had already set Davis's garage on fire before Greenwood tackled appellant in the front yard.

[2] This evidentiary burden does not apply if the legislature has defined a particular object as a deadly weapon. *See Coleman v. State*, 145 S.W.3d 649, 651 n.4 (Tex. Crim. App. 2004) (rejecting argument that, given the specific situation, any risk of danger from firearms was purely hypothetical because "Section 107(a)(17) of the Texas Penal Code specifically defines firearms as deadly weapons").

only have been a plan to trap them inside with no means of escape. The gratuitous fact that no resident, firefighter, or bystander was ultimately injured or killed by the massive resulting fire does not render the evidence insufficient to demonstrate that fire was used as a deadly weapon in this case.

We overrule appellant's first point of error.

## LEGAL SUFFICIENCY

In his second point of error, appellant argues that the "evidence presented at trial was insufficient to support a conviction for arson." He does not dispute that the fire was a result of arson, but contends that the State put forth insufficient evidence to establish that he is the person who set the building on fire.

To sustain an arson conviction, the State must show that the accused set the fire or was "criminally connected therewith." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Although the State must prove the defendant was the one who set the fire beyond a reasonable doubt, it is not required to exclude every conceivable alternative to a defendant's guilt. *See id.* (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining that "the evidence is not rendered insufficient simply because appellant presented a different version of the events")).

"When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on

10

that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id.* Juries are permitted to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Id.* We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* at 526 (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). We presume the jury resolved conflicting inferences in favor of the verdict and defer to that determination. *Id.*

"Identity of a perpetrator can be proved by direct or circumstantial evidence." *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Here there is both. Appellant does not dispute that the evidence demonstrates that two separate fires were started, one in the garage of the townhouse and one at the front of the townhouse. Greenwood provided direct and unequivocal testimony that he came upon appellant's spreading gasoline on the front of the building while holding a lighter and threatening to set Greenwood on fire too. This "eyewitness's testimony, alone, can be legally sufficient to support a guilty verdict." *Castilla v. State*, 374 S.W.3d 537, 539 (Tex. App.—San Antonio

11

2012, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge . . . of the weight to be given to the testimony"); *Reed v. State*, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd) ("[T]his court may not second-guess the jury, who had the opportunity to observe the witness' demeanor, expressions, gestures, and tone during his testimony.").

In addition, there is circumstantial evidence that appellant started the fire. Video surveillance tapes showed the fire in the garage starting in the brief period between appellant's driving into the alley that the garage faced and appellant's driving back out of the alley towards the front of the townhouse. *McLendon v. State*, 167 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (evidence that defendant's car was parked, with lights on, in front of house at 3:00 a.m., and that witness positively identified defendant as person he saw running away just before witness noticed that house was on fire was sufficient circumstantial evidence of identity to support defendant's conviction for arson). Both Davis's trial testimony that appellant was angry and jealous and the evidence that appellant forged the insurance application to obtain insurance on Davis's life are evidence of appellant's motive. *Merritt*, 368 S.W.3d at 526 ("Although motive and opportunity are not elements of arson and are not sufficient to prove identity, they are circumstances indicative of guilt.").

12

We overrule appellant's second point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish. TEX. R. APP. P. 47.2(b).